UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **BETTIE EPPS,** | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No.: 2:17-cv-01401-RDP |
| | } | |
| **NANCY A. BERRYHILL,** | } | |
| **Deputy commissioner for operations** | } | |
| **Performing the duties and functions** | } | |
| **Not reserved to the Commissioner of** | } | |
| **Social Security** | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM DECISION

Plaintiff Bettie Epps ("Plaintiff" or "Epps") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claims for Social Security Disability Benefits ("SSDI"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

### I. Proceedings Below

On April 24, 2014, Plaintiff filed an application for SSDI benefits, alleging a disability onset date of October 22, 2013. (Tr. 22). Plaintiff's initial application was denied by the Social Security Administration ("SSA") on August 5, 2014. (Tr. 98). After the denial, Plaintiff requested a hearing before an Administrative Law Judge (the "ALJ"). (Tr. 22). That hearing was held before ALJ Bruce W. MacKenzie on August 15, 2016. (Tr. 38). In his decision dated September 27, 2016, the ALJ concluded Plaintiff was not under a disability as defined by the Act since October 22,

2013. (Tr. 22-31). The appeals council denied Plaintiff's request for review on June 20, 2017. (Tr. 1-6). That denial was the final decision of the Commissioner, and is therefore a proper subject for this court's appellate review under 42 U.S.C. § 405(g).

**II.    Facts**

Plaintiff was born on December 7, 1956 and was 56 years old on the date of her alleged disability onset. (Tr. 196). Plaintiff is able to communicate in English, and her educational background includes a high school degree and one year of college. (Tr. 199, 201). In her application for disability benefits, Plaintiff alleges that degenerative disc disease, spinal arthritis, left hip problems, gastroesophageal reflux disease (GERD), and anxiety limit her ability to work. (Tr. 180). Before leaving the workforce, Plaintiff worked as an accounts receivable clerk. (Tr. 195).

During a checkup with her primary care physician, Dr. Ricky Fennell, on January 14, 2013, Plaintiff complained about anxiety. (Tr. 265). She told Dr. Fennell that her symptoms began in November 2012. (*Id.*). She reported feeling "somewhat stressed," anxious, and irritable, but denied depression (*Id.*). Even with these symptoms, she slept "okay" at times. (*Id.*). She was previously prescribed Trazadone for these issues.[1] (*Id.*). She noted her anxiety comes at times when she does not feel she should not be anxious, such as when she is at church. (*Id.*). Given this information, Dr. Fennell diagnosed Plaintiff with Anxiety disorder. (Tr. 267). He additionally diagnosed her with fatigue and malaise, hyperlipidemia, Vitamin D deficiency, and Hyperglycaemia. (*Id.*).

On April 29, 2013, Plaintiff returned to Dr. Fennell's office with complaints of lower back pain radiating down her left leg. (Tr. 300). She reported that her pain was present for two months before she came in for examination. (*Id.*). She denied any trauma provoking the discomfort, and

---

[1] The medical record does not indicate what doctor prescribed the previous prescription for Trazadone. (Tr. 265).

added that over-the-counter remedies and Lortab had not alleviated her discomfort. (*Id.*). Upon examination, Dr. Fennell noted moderate pain and tenderness in Plaintiff's lumbosacral area, particularly on the left side. (Tr. 301, 302). He observed that Plaintiff had normal strength and gait. (Tr. 302). In addition to her previous conditions, Dr. Fennell diagnosed her with accelerated hypertension and lower-back pain. (*Id.*). He prescribed Vicoprofen and Soma for pain, spasms, and inflammation, and he instructed Plaintiff to avoid lifting and strenuous physical activity. (Tr. 303). At the end of the visit, Dr. Fennell ordered an MRI for Plaintiff's lower lumbar spine. (Tr. 289). The MRI was conducted on May 10, 2013 and revealed lower lumbar spondylosis at the L5-S1 level with nerve root compression. (Tr. 289-90).

Dr. Fennell referred Plaintiff to Dr. Johnny Carter, who she initially saw on June 25, 2013. (Tr. 326). Dr. Carter examined Plaintiff's May 10, 2013 MRI and reviewed her subjective history, including the report of the sensation of "slipping or giving way" in her back. (*Id.*). After conducting his own examination, he discovered musculoskeletal issues in Plaintiff's lumbar spine and pelvis, but reported no gait or motor abnormalities. (Tr. 331). He diagnosed Plaintiff with low back pain, lumbar spondylolysis, degeneration of the intervertebral disc, lumbar facet syndrome, lumbar spinal stenosis, sciatica, and left-sided L5-S1 disc protrusion. (Tr. 332). He prescribed Plaintiff Acetaminophen Oxycodone, Gabapentin, and a Medrol Dosepak. (Tr. 333). He also referred her to physical therapy for stretches, and "conservative pain modalities." (*Id.*). Dr. Fennell noted that Plaintiff was to follow-up in the next 30 days and "if no better, schedule lumbar-caudal epidural injection with Dr. Carter in the UAB pain clinic." (Tr. 334).

Plaintiff began physical therapy with Joseph S. Schock in June 2013. (Tr. 335). During her initial evaluation on June 28, 2013, Schock noted that Plaintiff had pain while walking and lifting. (Tr. 335). Plaintiff told Schock that her ability to do housework was moderately limited secondary

3

to her pain. (Tr. 335). On July 25, 2013, Plaintiff reported lumbar pain ranging from a four out of ten to seven out of ten. (Tr. 338). She also exhibited 75 percent range of motion, albeit with pain. (*Id.*). Dr. Schock noted "the patient tolerated today's treatment well after adjustment to the left side. Pain relief with traction." (*Id.*).

In September 2013, Plaintiff returned to Dr. Carter for lumbar, pelvis, and left hip pain treatment. (Tr. 339). She again reported a sensation that felt like her back was "slipping" or "giving way." (Tr. 339, 348). Dr. Carter observed lumbar spine and pelvis issues, including: "mildly tender" bilateral L5-S1 semispinalis muscle, "mildly positive" left SLR, and "mildly diminished" left ankle reflexes. (Tr. 345). Plaintiff's gait and coordination appeared normal. (*Id.*). Dr. Carter diagnosed her with lumbar radiculopathy, lumbar spondylolysis, lumbar facet syndrome, low back pain, lumbar spinal stenosis, sciatica, and lumbar disc herniation and recommended a lumbar-caudle epidural. (Tr. 346). On September 12, Dr. Carter administered a fluoroscopic guided lumbar epidural steroid injection with contrast enhancement and limited IV sedation. (Tr. 358). However, Plaintiff said that this injection only provided relief for about eight hours before her pain returned. (Tr. 368). Dr. Carter thought that Plaintiff's report of morning relief followed by a return of pain later that night with no inciting event was unusual. (*Id.*). In light of "her unusual sudden increase in pain, we [] check[ed] new lumbar spine MRI scan to compare with the previous to rule out new extension of the disc." (*Id.*).

When Plaintiff returned on March 31, 2014, she told Dr. Fennell that her low back pain made her unable to fulfill her duties at home and at work and unable to sit for an extended period of time. (Tr. 316). Dr. Fennell notes that Plaintiff had an epidural block, but that she reported it made her pain worse. (*Id.*). Dr. Fennell recommended that Plaintiff return to Dr. Carter for a second epidural block. (Tr. 317).

4

On May 5, 2014, Dr. Fennell filled out a depressive disorder sheet for Plaintiff, indicating that "she certainly has a lot of depression symptoms." (Tr. 322-325, 451). During a visit on the same day, Plaintiff reported "bad nerves," decreased appetite, poor sleep, and thoughts of suicide two-to-three times per day. (Tr. 451). In addition to diagnosing her with lumbar spondylosis, lumbar spinal stenosis, left hip pain, left leg sciatica, Dr. Fennell diagnosed Plaintiff with mental depression. (*Id.*). He prescribed her Cymbalta and increased her dosage of Xanax. (*Id.*). Dr. Carter noted "a lot of her issues are mainly depression-related and not anxiety. It appears that her chronic pain is what is driving a lot of her symptoms." (*Id.*).

When Plaintiff returned to Dr. Carter on May 9, 2014, she told him that she was having difficulty sleeping because of pain. (Tr. 370). Issues with Plaintiff's lumbar spine and pelvic region were again noted, yet she still continued to ambulate normally. (Tr. 376). He diagnosed her with thoracic or lumbosacral neuritis or radiculitis, displacement of lumbar intervertebral disc without myelopathy, sciatica, and lumbar degeneration. (Tr. 378). He also recommended that Plaintiff consult with a pain management specialist for conservative pain treatment options. (Tr. 379).

During her next visit with Dr. Fennell on June 2, 2014, Plaintiff reported that she could not tolerate the Cymbalta due to the side effects of itchiness and swelling. (Tr. 453). However, Xanax helped her anxiety and Percocet dulled the discomfort of her back pain. (*Id.*). Dr. Fennell noted that "she is scheduled for chronic pain management evaluation soon." (*Id.*).

Plaintiff began seeing pain specialist Dr. Peter Nagi on June 10, 2014. (Tr. 427). Plaintiff told Dr. Nagi that her back pain stemmed from a fall in a parking lot nine years prior. (*Id.*). She reported a constant sharp burning pain rated as a seven out of ten at its best and a ten out of ten at its worst. (Tr. 428). Dr. Nagi noted Plaintiff's "painful episode" after her epidural injection, "but she does not completely recall this issue." (Tr. 427). Plaintiff reported that she can sit for about an

5

hour and a half, stand for 45 minutes, and walk for about an hour. (Tr. 428). Emotionally, she said she experienced anger, depression, suicidal thoughts, disinterest, frustration, hopelessness, and panic. (Tr. 429). However, he noted in his psychiatric evaluation that Plaintiff was cooperative with appropriate mood, and lacked suicidal ideation or plan. (Tr. 432, 433). After completing his examination, Dr. Nagi diagnosed Plaintiff with lumbago, lumbosacral spondylosis without myelopathy, lumbar spinal stenosis, lumbar intervertebral disc displacement without myelopathy, and myofascial pain. (Tr. 433). He wrote a prescription for Gabapentin and Zanaflex, and he scheduled her for pain injections and more physical therapy. (*Id.*). He noted that "she has failed PT at this time and it made her pain worse. We will try once she has had her injection and pain is better controlled." (*Id.*). He opined she could benefit from a prescription for TENS unit.[2] (*Id.*).

On September 15 and October 7, 2014, Plaintiff followed-up with Dr. Fennell for reevaluation visits. (Tr. 454-457). She indicated her back pain and depression still caused issues. (Tr. 454, 456). Dr. Fennell elected to add Viibryd to her regimen to help combat her depression. (Tr. 454). Between these appointments with Dr. Fennell, Plaintiff returned to Dr. Nagi on September 26 and reported mild relief for two to three weeks after an epidural injection, but also reported the new symptom of "feel[ing] like tailbone is being scraped." (Tr. 439). By the time Plaintiff returned to Dr. Fennell on December 22, 2014, she had returned to work and was wearing a back brace. (Tr. 458). She still experienced lower lumbar pain at that time and was told that further epidural blocks would not benefit her and she may require surgery. (*Id.*). After this visit, Plaintiff did not return to another physician for her back issues until September 2015. (Tr. 460).

---

[2] According to the manufacturer's website, "TENS (Transcutaneous Electrical Nerve Simulation) is a small machine with electrodes that send stimulating pulses along the nerve strands and across the skin's surface. These impulses help to reduce pain by encouraging the body to produce more endorphins, which act as a natural painkiller." *How Does a Tens Unit Work*, The Original Tens Units (July 31, 2018, 3:34 PM), https://www.tensunits.com/WORK.html/.

Plaintiff was first diagnosed with COPD during a visit with Dr. Fennell on June 11, 2015. (Tr. 460). Before this visit, the only issues she had expressed with cough and congestion were tied to some acute illness. (Tr. 269, 459). On this day, she was originally scheduled for a follow-up appointment to check on her back and mental health issues. (Tr. 460). Dr. Fennell noted, "She says the Viibryd has worked very well for her depression symptoms. She seems to be getting along very well now, using a combination of Viibryd and Benzodiazepine/Xanax." (*Id.*). No mention was made during this visit about Plaintiff's back issues. (*Id.*). Upon returning for another reevaluation on September 29, she continued to complain about her ongoing back and depressive issues. (Tr. 461). Dr. Fennell referred Plaintiff to another pain specialist because he does "not participate in chronic pain." (Tr. 462). Nevertheless, Dr. Fennell wrote "I have encouraged her to become more physically active. I think she can get out and walk some for exercise. She may have to pre-medicate herself with a pain pill about an hour before she goes out to walk. She has gained weight, probably from inactivity. This is not going to help her back." (*Id.*).

Plaintiff was referred to the Alabama Pain Physicians ("APP") in April 2016. (Tr. 466). In his new patient narrative, Dr. Adam Farris stated that "patient's pain began approximately three years ago without a precipitating event…Patient reports being previously treated at a pain management clinic; patient reports being treated with Dr. Carter at UAB Highlands and stopped going due to bad hospitality of the clinic in 2015." (Tr. 470). Dr. Farris diagnosed Plaintiff with mechanical back pain from spondylosis and SI arthralgia. (Tr. 481). However, Plaintiff was not a candidate for opioids from APP because of a "discrepancy in history" of her prescription fillings. (*Id.*). Dr. Farris wrote, "I do not feel comfortable prescribing controlled substances given her story of filling Norco but not filling it, taking both medications [Percocet and Norco], stating both are currently prescribed, etc." (Tr. 484). Dr. Farris recorded Plaintiff's Screener and Opioid

7

Assessment for Patients with Pain ("SOAPP") score as 26, which is considered "high risk." (*Id.*). Dr. Farris did give Plaintiff pain injections on June 26 and July 5, 2016, which reduced her pain level from an 8/10 and 7/10 (respectively) to zero (Tr. 489, 495).

During this stretch of medical treatment, Plaintiff returned to the workforce for a brief time period. (Tr. 195, 241). From November 11, 2014 to February 6, 2015 Plaintiff worked for Delta Business Systems as a claims processor. (Tr. 195, 241). She earned $4,920 in the fourth quarter of 2014 and $4,057 in the first quarter of 2015. (Tr. 195). During her February 10, 2015 visit with Dr. Fennell, Plaintiff told him she left her job with Delta Business Systems four days earlier. (Tr. 459). She sought treatment for the acute illnesses of Rhinosinusitis and Pharyngitis during that visit and not her back pain or anxiety. (*Id.*).

### III. ALJ Decision

Disability under the Act is determined using a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities for pay or profit. 20 C.F.R. § 404.1572. Work activity may be considered substantial even if it is part-time or if the claimant does less, gets paid less, or has less responsibility than when she worked before. 20 C.F.R. § 404.1572(a). Even if no profit is realized, work activity may still be considered gainful so long as it is the kind of work usually done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant is engaging in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b).

Second, the ALJ must determine whether the claimant has a severe medical impairment or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, then she may not claim disability.

*Id.* If the impairment is not expected to result in death, the claimant must also meet the 12-month duration requirement. 20 C.F.R. § 404.1509.

Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, and 404.1526. If the claimant meets or equals a listed impairment and meets the duration requirement, she will be found disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d).

If the claimant does not meet the requirements for disability under the third step, she may still be found disabled under steps four and five of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work notwithstanding her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant is unable to perform past relevant work, then the analysis moves to the fifth and final step of the analysis.

In the final step of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). At this point, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g), 404.1560(c).

Here, the ALJ found that Plaintiff engaged in substantial gainful activity from November 11, 2014 through February 6, 2015. (Tr. 24). This time period occurred after the alleged onset date of October 22, 2013. (Tr. 22). However, there were continuous twelve-month periods during which

Plaintiff was not engaged in substantial gainful activity. (Tr. 25). For these periods, the ALJ underwent the sequential evaluation of Plaintiff's claim as required by 20 C.F.R. § 404.1520. (Tr. 25). At Step Two of the analysis, the ALJ found that Plaintiff's anxiety and depression were non-severe impairments. (Tr. 25). However, the ALJ determined Plaintiff had the following "severe" impairments: lumbar spondylosis without myelopathy or radiculopathy; myalgia; chronic pain syndrome; and chronic obstructive pulmonary syndrome. (Tr. 25). At Step Three, the ALJ held that none of these impairments met or medically equaled any of the impairments in the Listings of Impairments. (Tr. 26).

The ALJ also determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with some limitations. (Tr. 26). Specifically:

> The claimant would require a sit/stand option with the retained ability to stay on or at a work station in no less than 30 minute increments each without significant reduction of remaining on task, and she is able to ambulate short distances of up to 100 yards per instance on flat hard surfaces. She is able to occasionally use bilateral foot controls. She can frequently lift overhead bilaterally. She can occasionally climb ramps and stairs, but never climb ladders or scaffolds. She can frequently stoop but can only occasionally crouch, kneel, and crawl. The claimant should never be exposed to unprotected heights or concentrated dust, fumes, gases or other pulmonary irritants. She should be exposed to no more than moderate noise levels. In addition to normal workday breaks, she would be off-task five percent of an eight-hour workday (in nonconsecutive minutes).

(Tr. 27). Given this RFC, the ALJ determined at Step Four that Plaintiff would be able to perform her past relevant work as an accounts receivable clerk. (Tr. 31). Thus, Plaintiff was found to be not disabled as defined by the SSA. (Tr. 31).

## IV.  Plaintiff's Arguments for Remand and Reversal

In her brief, Plaintiff argues that the commissioner issued a decision that was not based on substantial evidence and is inconsistent with applicable law. (Pl.'s Br., Doc #8 at 4). Specifically, Plaintiff asserts the ALJ failed to properly evaluate the credibility of her complaints of pain

consistent with the Eleventh Circuit Pain Standard and improperly determined that her anxiety and depression were non-severe impairments. (*Id.* at 5). For the reasons contained herein, the court finds that substantial evidence exists to support the ALJ's findings and the correct legal standards were applied.

V. **Standard of Review**

The only relevant question for this court to decide is whether the record contains substantial evidence to support the ALJ's decision, *see* 42 U.S.C.A. § 405; *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 92 F.2d 129, 131 (11th Cir. 1990). Under Title 42 U.S.C. § 405(g), the Commissioner of Social Security's findings are conclusive so long as they are supported by "substantial evidence." The district court may not reconsider the facts, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The reviewing court must review the record in its entirety to determine whether the decision reached is reasonable and supported by substantial evidence. *Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence is more than a mere scintilla but less than a preponderance of the evidence. *Id*. It is relevant evidence that a reasonable person would accept as adequate to support the conclusion reached. *Id*. (citing *Bloodsworth*, 703 F.2d at 1239). Even if the evidence preponderates against the Commissioner's findings, the Commissioner's factual findings must be affirmed if they are supported by substantial evidence. *Id*. Despite the limited review of the ALJ's findings, review does not automatically prompt the court to affirm. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

**VI. Discussion**

Plaintiff contends that the ALJ's decision is flawed in two ways. (Pl.'s Br., Doc #8 at 5, 8). First, Plaintiff argues the ALJ erred in finding that her anxiety and depression were non-severe impediments in accordance with 20 C.F.R. 404.1520(c). (*Id.* at 5). Second, Plaintiff claims the ALJ erred in giving little weight to her testimony regarding "the intensity, persistence, and limiting effect" of her symptoms. (*Id.* at 8).

**A. Severity of Plaintiff's Mental Impairments**

The ALJ had substantial evidence upon which to base his finding that Plaintiff's mental impairments of anxiety and depression were non-severe. Plaintiff ultimately has the burden of proving the severity of an impairment. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

When assessing the severity of a claimant's medical condition, ALJs must assess the degree of the claimant's limitation in accordance with the four functional areas contained in the "paragraph B" criteria of the Listings of Impairments. *See* 20 C.F.R. § 404.1520(a)(b)(2), (c)(3), (e)(4); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C. These four criteria are limitation in activities of daily living, limitation in social functioning, limitation in concentration, persistence, or pace, and episodes of decompensation of extended duration. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C.

Regarding the first criterion, there is certainly evidence in the record showing Plaintiff's progress and a decrease on the limitations imposed by her mental health issues. The ALJ pointed to substantial record evidence establishing that over the course of her treatment history for these conditions, Dr. Fennell prescribed her Xanax, Benzodiazepine, Cymbalta, and Viibryd. (Tr. 25, 451, 454). Ultimately, in June 2015, Dr. Fennell reported that Plaintiff conveyed that the Viibryd has "worked very well for her depression symptoms." (Tr. 25, 460). Dr. Fennell wrote, "She seems

to be getting along very well now, using a combination of Viibryd and Benzodiazepine/Xanax." (Tr. 25, 460). The ALJ considered Plaintiff's testimony that she had difficulty making decisions, but determined that her assertions were not consistent with the treatment records. (Tr. 25). Plaintiff testified that she can prepare simple meals for herself and does not need reminders to take her medications. (Tr. 25, 216, 217). This substantial evidence supports the ALJ's finding of mild restrictions in the area of daily living.

The second criterion involves an assessment of Plaintiff's social functioning related to her mental impairments. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C. The ALJ determined that Plaintiff's limitations in this area are mild. (Tr. 25). At her hearing before the ALJ, Plaintiff stated she did not presently have a social life and did not like being around other people. (Tr. 25, 59). However, the ALJ cited substantial medical evidence wherein her physicians reported that Plaintiff was cooperative and had "appropriate mood" during her visits. (Tr. 25, 260, 263, 266, 269, 272, 317, 432, 442). Other records indicate that Plaintiff gets along well with authority figures and spends time talking with others. (Tr. 25, 220-22). At least one doctor noted that the limitations she faces in this area are not tied to her psychological issues, but to her physical pain. (Tr. 220-22). Based these findings in the record, the ALJ's finding of mild restriction in the area of social functioning is based on substantial evidence.

The third criterion requires an analysis of the Plaintiff's concentration, persistence, and pace. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C. The ALJ found that the Plaintiff only had mild limitation in this area. (Tr. 25). While Plaintiff said that she has a hard time remembering things, she admitted that she can concentrate. (Tr. 25, 57-58). Other substantial evidence establishes that she is was able to pay her bills on her own, count change, and use a checkbook. (Tr. 25, 219). The

ALJ noted that Plaintiff's symptoms -- especially after her medication was optimized -- could be controlled. (Tr. 25).

Finally, and in any event, because the ALJ proceeded beyond step two of the analysis, any error in failing to find anxiety and depression "severe" was harmless. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("We have explained that the finding of any severe impairment, whether or not it qualifies as a disability, is enough to satisfy the requirement of step two of the sequential evaluation process."). That is, even assuming that Plaintiff is correct that her depression and anxiety are "severe," the ALJ's recognition of that would not, in any way, have changed the step two analysis or the ALJ's analysis beyond step two. For these reasons, the ALJ did not err in finding that Plaintiff's mental impairments were not severe.

### B. Subjective Complaints of Pain and Limitation

In the Eleventh Circuit, a plaintiff must satisfy the pain standard test by showing "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1255 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). If the ALJ determines that Plaintiff has a medically determinable impairment that could reasonably be expected to produce her pain, he must then evaluate the intensity and persistence of Plaintiff's symptoms to determine if they limit her capacity to work. 20 C.F.R. § 404.1529(c)(1).

In determining the effect of a claimant's pain, the ALJ considers all of the evidence - both objective and subjective. *See* 20 C.F.R. § 404.1529. However, the ALJ may not require a direct link between the objective findings and the severity of the plaintiff's pain. *Id.* While the ALJ must consider the plaintiff's subjective evaluation of her pain, it is only one factor used to make his final

determination. *See* 20 C.F.R. § 404.1529(c)(4). Other relevant factors include the nature of a plaintiff's symptoms, the effectiveness of medication, and a plaintiff's activities. *Id.* Regarding the testimony of a plaintiff, a "clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995); *see also Mitchell v. Commissioner*, 771 F.3d 780, 782 (11th Cir. 2014) ("[C]redibility determinations are the province of the ALJ …").

If the ALJ rejects Plaintiff's testimony regarding pain, the ALJ must "articulate explicit and adequate reasons" for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Further, if proof of disability is based upon subjective evidence and a credibility determination is critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The reasons for discrediting pain testimony must be based on substantial evidence. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 2007). Thus, although the ALJ's "credibility determination does not need to cite 'particular phrases or formulations,' … it cannot merely be a broad rejection which is not enough to enable the district court . . . to conclude that the ALJ considered her medical condition as a whole." *Dyer*, 395 F.3d at 1210 (citing *Foote*, 67 F.3d at 1562).

Here, the ALJ based his credibility finding on substantial evidence in the record. (Tr. 29-30). Contrary to Plaintiff's assertion of a high level of pain, the records show that she generally walked with a normal gait and normal or near normal motor strength, and only intermittently was a limp or some reduced leg strength observed. (Tr. 30, 331, 335-36, 345, 366-67, 376-77, 385, 393, 400, 410, 419, 450, 451, 464, 479, 481). In fact, treating physician Dr. Fennell's recommended that Plaintiff move around more: "I have encouraged her to become more physically

15

active. I think she can get out and walk for some exercise. She may have [to] premedicate herself about an hour before she goes out to walk." (Tr. 30, 462). As the ALJ noted, this evidence starkly contradicted Plaintiff's assertion that she is severely restricted in her daily activities. (Tr. 30). Furthermore, the record supports the ALJ's conclusion that there is insufficient medical evidence to back up Plaintiff's claim of pain in her upper extremities. (Tr. 30). As the ALJ noted, no visit supports her testimony on this symptom. (Tr. 55-56, 260, 262, 265-66, 268-69, 271, 300, 302, 316, 326, 331, 338, 339, 344-45, 348, 353, 354, 360, 370, 376, 385, 388, 392-93, 396, 399-400, 410, 414, 419, 422, 432, 449, 450-51, 453-54, 456, 458-59, 460, 461-64, 470, 476, 478-79, 481).

The ALJ also had substantial medical evidence on which to base his opinion that Plaintiff's claim of disabling medical side-effect issues was overstated. (Tr. 30). The only evidence of this in the record is reported grogginess from gabapentin and bumps and swelling from Cymbalta. (Tr. 368, 373, 453). When Plaintiff expressed issues with the Cymbalta, Dr. Fennell took her off that medication. (Tr. 453).[3]

With regard to Plaintiff's COPD, the ALJ had substantial evidence upon which to base his conclusion that there are no disabling limitations associated with that diagnosis. (Tr. 30). Plaintiff infrequently sought treatment for symptoms of COPD. (Tr. 30, 448, 459, 460, 463-65). On most occasions, Plaintiff's chest checked out normally. (Tr. 30, 453-54, 456, 460, 462-64). The instances when her chest had issues were occasions on which she sought treatment for acute symptoms, and she was diagnosed with another medical condition. (Tr. 30, 453-54, 456, 460, 462-64).

---

[3] In his decision, the ALJ noted that he reviewed the entirety of the record. (Tr. 24). While not specifically addressed in his opinion, a part of the record includes a visit with a doctor at Alabama Pain Physicians, Dr. Adam Farris. (Tr. 481). In this encounter, the Dr. Farris did not feel comfortable prescribing opioids to plaintiff and decided against doing so. (*Id.*). Dr. Farris was concerned with discrepancies between what Plaintiff told him and what pharmaceutical records showed regarding her prescription history. (*Id.*). This further bolsters the ALJ's opinion regarding Plaintiff's credibility.

Based on the foregoing, the ALJ was not "clearly wrong" in discrediting Plaintiff's testimony. *See Jerrell v. Commissioner*, 433 Fed. Appx. 812, 814 (11th Cir. 2011) (citing *Holt*, 921 F.2d at 1223) (holding that statements concerning the intensity, duration, and limiting effects of Plaintiff's symptoms were not entirely credible because the objective medical evidence did not confirm the severity of the alleged pain arising from the condition); *Werner v. Commissioner*, 421 Fed. Appx. 935, 939 (11th Cir. 2011) ("The question is not … whether the ALJ could have reasonably credited [the plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it.").

## VII. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. It is not the duty of this court to reweigh the evidence or substitute its judgment for that of the commissioner. *Moore v. Barnhart*, 403 F.3d 1208, 1213 (11th Cir. 2005). "Even if the evidence preponderates against the decision," this court must affirm so long as there is substantial evidence in support of the ALJ's finding. *Id.* (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The aforementioned evidence cited by the ALJ satisfies this standard.

The Commissioner's final decision is due to be affirmed. A separate order in accordance with this Memorandum Decision will be entered.

**DONE** and **ORDERED** this August 15, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE